ESTATE OF LEON N. GILLETTE, DECEASED, BESSIE W. GILLETTE AND WILLIAM N. GILLETTE, EXECUTORS, PETITIONERS, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6745. Promulgated June 25, 1946.

*Charles M. Kritzman, Esq.*, for the petitioners.
*Walt Mandry, Esq.*, for the respondent.

OPPER, *Judge*: Respondent determined deficiencies in gift tax in the total amount of $5,748.73, as follows: 1936, $972.42, and 1941, $4,776.31.

The petition was filed by Leon N. Gillette, hereinafter sometimes referred to as decedent; and upon his death, after motion duly made, the executors of decedent's estate were substituted as petitioners and the caption of the proceeding was changed.

The issues involved are whether distributions to decedent's son in the years of 1936 and 1941, pursuant to the terms of a trust created by decedent on December 6, 1929, for the benefit of his son, constitute taxable gifts in the years of distribution, and whether the relinquishment by decedent in 1941 of the power to revoke a second trust created by him on December 6, 1929, for the benefit of his daughter, constituted a taxable gift to her in 1941.

All of the facts have been stipulated. The facts as so stipulated are hereby found. So far as material to this proceeding they can be summarized as follows:

Petitioners are the executors under the will of Leon N. Gillette, who died on May 3, 1945, a resident of Westchester County, New York.

Decedent filed gift tax returns for the years 1936 and 1941 with the collector of internal revenue for the third district of New York.

On December 6, 1929, decedent created a trust by which he delivered to the Bankers Trust Co., New York, New York, (hereinafter referred to as the "Trustee") certain securities to be held by the trustee for the benefit of his son, William N. Gillette. This trust will be referred to as the "first trust."

Pursuant to the terms of the first trust, all of the net income thereof was paid to the son until he reached the age of 30 years on March 3, 1936, at which time one-half of the corpus, at a value on that date of $36,206.98, was paid over to him. He continued to receive the income on the remaining one-half until he reached the age of 35 years on March 3, 1941, at which time the remaining assets were distributed and paid over to him. The remaining property distributed had a value on that date of $32,445.27.

It was further provided in this first trust that if the son were to die before the termination of the trust the remainder of the capital and income (hereinafter referred to as the "capital residue") was to be paid to decedent, if then living; if not, to decedent's wife, Bessie W. Gillette. In the event neither was then living, then the capital residue was to be disposed of as the son should appoint in his will. In default of appointment, the capital residue was payable to the son's lawful issue, surviving him, *per stirpes*, in default of which to decedent's

daughter, Jeanne B. Gillette; in case of her predecease, to her lawful issue then surviving, *per stirpes.*

Decedent retained the right to revoke this first trust:

* * * by filing with the Trustee an instrument in writing duly acknowledged, expressing his intention so to do, which said instrument of revocation shall also be assented to in writing by an instrument duly executed and acknowledged by either the wife of the Donor, or by the said Beneficiary. Otherwise this instrument is to be deemed irrevocable.

Among the powers accorded the trustee was the "uncontrolled discretion" to pay to the son any part of the corpus of the first trust if it believed that such payment would be in the best interests of the son.

On December 6, 1929, decedent created a second trust, under which the trustee was to pay the income to decedent's daughter during her lifetime; upon her death, the capital residue was payable to decedent, if living; if not, then to decedent's wife. In the event neither was living on the death of the daughter it was payable to the daughter's lawful issue, surviving her, *per stirpes*, in default of which issue, to decedent's son; and in case of his predecease to his lawful issue then surviving.

As in the first trust, the trustee had the "uncontrolled discretion" to pay to the daughter any part of the corpus if it believed such payment were in her best interests.

Decedent reserved the right to revoke this second trust:

* * * by filing with the Trustee an instrument in writing duly acknowledged, expressing his intention so to do, which said instrument of revocation shall also be assented to in writing by an instrument duly executed and acknowledged by either the wife of the Donor, or by the said William N. Gillette [decedent's son]. Otherwise this instrument is to be deemed irrevocable.

On June 21, 1941, an agreement was entered into between decedent, his wife, and his son whereby they renounced and released any rights of revocation granted them under the second trust, and decedent released all his rights to any property held under the second trust and irrevocably conveyed any right to receive any part of the capital or income from the second trust on the death of his daughter, and irrevocably transferred and conveyed such right and interest to his wife and to his son upon terms specified in the agreement. The principal of the second trust on that date had a value of $62,390.78.

The possibility of reverter relinquished by decedent on June 21, 1941, had a value on that date of $4,460.30.

Decedent was born on August 18, 1877; his wife, on January 3, 1875; his son, on March 3, 1906; his daughter, on February 22, 1916.

Decedent's daughter was unmarried and had no issue on December 29, 1929. She was married on May 26, 1939, and is now known as

Jeanne G. Lovejoy. Her only child was born on August 21, 1941, and is now living.

Respondent in the notice of deficiency stated:

It is determined that the distributions made to your son in the year 1936 under the trust created by you on December 6, 1929 are taxable as gifts under Section 501 of the Revenue Act of 1932, as amended.

\* \* \* \* \* \* \*

It is determined that the surrender on June 21, 1941 of your power to revoke the trust created by you on December 6, 1929 for the benefit of Jeanne G. Lovejoy effected a gift of the total value of the trust on that date and, therefore, the total value of the assets of the trust are included as a taxable gift for the calendar year 1941 under the provisions of Section 1000 of the Internal Revenue Code. The distributions in 1941 to your son under the trust created on December 6, 1929 are determined to be taxable gifts under Section 1000 of the Internal Revenue Code.

Neither the family relationship to decedent of his wife and son nor the remoteness of their contingent remainders suffice to persuade us that their respective interests in the trusts fail to be both substantial and adverse. This is the sole question, respondent's determination of gift tax deficiencies being based upon the incompleteness of the original gifts, which in turn arises from the claim that petitioner's right of revocation was not limited by the required concurrence of a person possessing a substantial adverse interest. *Burnet* v. *Guggenheim*, 288 U. S. 280; H. Rept. 704, 73d Cong., 2d sess. (1934), p. 40; Regulations 108, sec. 86.3.

It is true that the wife's interest in the son's trust was contingent upon outliving both decedent and their son, and that the son's interest in the other trust was limited by his required survival of his mother, father, and younger sister, and the sister's death without issue. But the trusts were substantial in amount. See *Commissioner* v. *Prouty* (C. C. A., 1st Cir.), 115 Fed. (2d) 331. And in *Meyer Katz*, 46 B. T. A. 187; affd. (C. C. A., 7th Cir.), 139 Fed. (2d) 107, a wife's interest who "would benefit from the trust only if the minor beneficiary should predecease her and the grantor leaving no issue" was held to be a substantial adverse interest. *Clair R. Savage*, 4 T. C. 286, 293. Manifestly, the life expectancy of decedent's wife was not as great as that of her son, but a similar situation existed in the *Katz* case. And the son's chances of surviving his father and mother were so great that his contingency was virtually confined to survival of his nearly contemporary sister. We are not persuaded that in either instance the prospects of succession are sufficiently different from those in the *Katz* case to call for the opposite result.

*Decision will be entered for the petitioners.*