FREDERIC E. CAMP, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13964.   Promulgated October 6, 1950.

*Marvin Lyons, Esq., Sinclair Hatch, Esq.,* and *Charles I. Pierce, Esq.,* for the petitioner.

*Paul P. Lipton, Esq.,* for the respondent.

OPINION.

TIETJENS, *Judge:* This proceeding involves petitioner's gift tax liability for the year 1937, under section 501 of the Revenue Act of 1932,[1] and the year 1943, under section 1000 of the Internal Revenue Code.[2] The primary issues relate to the year 1937 but also have a bearing upon the year 1943 in determining net gifts for prior years.

The petitioner's primary contention is that respondent erred in failing to determine that the transfer in trust on February 1, 1932, constituted a completed gift of the entire trust property because the grantor's reserved power of revocation was restricted by the required concurrence of either of two persons, his mother or half brother, each of whom had a substantial adverse interest. If, under the facts, that contention is correct, then the subsequent amendment to the trust indenture in 1937 is immaterial taxwise for the years involved herein, *Estate of Leon N: Gillette,* 7 T. C. 219, for if there was a present transfer of property by gift in 1932, there was not another transfer of the same property in 1937. Cf. *Burnet* v. *Guggenheim,* 288 U. S. 280.

On the other hand, respondent's primary contention is that the transfer in trust on February 1, 1932, did not result in a completed gift of either corpus or income of the trust to any of the named beneficiaries, because petitioner-grantor retained dominion and control thereof through a prior agreement by the half brother that he would comply fully with petitioner's wishes in any subsequent revocation or modification of the trust. Respondent's further primary contention is that by the amendment to the trust on December 11, 1937, petitioner made a completed gift of the entire trust property, having a fair market value of $518,089.76 on that date, because after such amendment petitioner's power of revocation could be exercised only in conjunction

---

[1] SEC. 501. IMPOSITION OF TAX.

　(a) For the calendar year 1932 and each calendar year thereafter a tax, computed as provided in section 502, shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift.

　(b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but, in the case of a nonresident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States. The tax shall not apply to a transfer made on or before the date of the enactment of this Act.

[2] SEC. 1000. IMPOSITION OF TAX.

　(a) For the calendar year 1940 and each calendar year thereafter a tax, computed as provided in section 1001, shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift. Gift taxes for the calendar years 1932-1939, inclusive, shall not be affected by the provisions of this chapter, but shall remain subject to the applicable provisions of the Revenue Act of 1932, except as such provisions are modified by legislation enacted subsequent to the Revenue Act of 1932.

　(b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but, in the case of a nonresident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States.

with his wife who, as the present life beneficiary, had a substantial adverse interest in the entire trust property.

In form, the trust indenture of February 1, 1932, created several separate beneficial interests in the trust property including, *inter alia*, the wife's present interest and the mother's contingent interest in the income of the trust and the half brother's contingent remainder interest in the corpus of the trust. In giving weight to the formal rights thus conferred by the trust indenture, special scrutiny must be given to the arrangement and the relationship of the beneficiaries to the petitioner-grantor in regard to his retained control over the trust property, *Commissioner* v. *Prouty*, 115 Fed. (2d) 331, for the reason that in considering tax consequences the essence of a completed gift by transfer in trust is the grantor's abandonment of dominion and control over the economic benefits of the property rather than any technical changes in title, and to the extent that the grantor retains the power to revoke the trust or recapture the property represented by any of the interests therein, the transfer is rendered incomplete as a gift until such power is relinquished. *Smith* v. *Shaughnessy*, 318 U. S. 176; *Sanford's Estate* v. *Commissioner*, 308 U. S. 39; and *Burnet* v. *Guggenheim*, *supra*.

From the time the trust was created on February 1, 1932, and until December 11, 1937, the petitioner's reserved power to revoke or modify the trust, either in whole or as to any of the various separate beneficial interests, was exercisable in conjunction with either his mother, the contingent income beneficiary, or his half brother, a contingent remainderman. As to that period of the existence of the trust, the question presented is whether both of those persons had a substantial adverse interest in the disposition of the trust property or the income therefrom. It has been held that a substantial adverse interest means a direct legal or equitable interest but not necessarily one presently vested in possession and enjoyment, *Commissioner* v. *Prouty*, *supra*, and technically, at least, the interest of the mother and half brother would seem to be substantially adverse, *Estate of Leon N. Gillette*, *supra*. However, bearing in mind the admonition of *Helvering* v. *Clifford*, 309 U. S. 331, and similar cases, that we must look beyond legal technicalities, we have in the instant proceeding a state of facts bearing directly upon the execution of the trust indenture which leads us to the conclusion that in substance the half brother had no substantial adverse interest in the corpus or income of the trust.

Prior to the creation of the trust in controversy the petitioner in February 1930 transferred $100,000 in trust to pay the income therefrom to his half brother, Ridgely, for life and reserved to himself alone the power to revoke such trust. With regard to the trust in controversy the testimony establishes and we have found as facts: That

petitioner's purpose was to provide an income for his wife, Alida, and the remainder to his surviving issue; that petitioner intended to retain such command and control over the trust property as to enable him to recapture the same if for any reason Alida ceased to be his wife during his lifetime; and that consistent with such purpose and upon the execution of the trust indenture, the petitioner and Ridgely had a mutual understanding that Ridgely would at any time consent to any changes in the trust as subsequently desired by petitioner. As further evidence of petitioner's purpose in creating the trust, the petitioner, in conjunction with Ridgely, in 1934 changed the original provision as to the payment of the income to Alida for life to provide that she should receive such income only as long as she continued to reside with him as his wife during his lifetime. As further evidence of mutual understanding between petitioner and Ridgely as to the latter's compliance with petitioner's subsequent desires to change the terms of the trust, Ridgely joined in the execution of the amendment of December 11, 1937, which provided that the term "issue of the Donor" should include petitioner's adopted children, thereby making the respective contingent interest of both Ridgely and Johnanna more remote, and further provided that petitioner's wife should be substituted in place of both Ridgely and Johnanna as the only person in conjunction with whom petitioner could thereafter revoke or modify the trust.

On this record we conclude that petitioner did not intend to make final disposition of the trust property at the time he created the trust; that petitioner's half brother, Ridgely, had no substantive substantial adverse interest in the corpus or income of the trust created on February 1, 1932; and further that since petitioner could revoke the trust at any time in conjunction with Ridgely, the transfer in trust was not a completed gift for tax purposes as to any of the beneficial interests specified therein, as contended by respondent. Cf. *Marguerite F. Schwarzenbach*, 4 T. C. 179.

Upon the execution of the trust amendment on December 11, 1937, the petitioner's wife became the only person in conjunction with whom he could thereafter exercise his reserved power of revocation or modification of the trust and as the present income beneficiary she had a substantial adverse interest in the entire trust property, so that by such amendment petitioner abandoned his dominion and control over the trust property. Accordingly, we further conclude that for gift tax purposes petitioner made a completed gift of the entire trust property on December 11, 1937, as affirmatively alleged by respondent. Cf. *Estate of Ethel K. Childers*, 10 T. C. 566. It follows that respondent erred in his determination as set forth in the deficiency notice from which this proceeding was initiated and the amounts of increased deficiencies claimed by respondent will be determined under Rule 50.

In view of the foregoing conclusions and with respect to the applicable corollary issues raised by the parties, we hold : That the fair market value of the completed gift of property in trust on December 11, 1937, was $518,089.76; that the amount of $17,828.34 income of the trust paid to Alida during 1937 prior to December 11 constituted a gift to her by petitioner in that year; that in computing the gift tax liability for 1937 petitioner is entitled to an unused portion of the $40,000 specific exemption in the amount of $7,057.21; and that in determining the amount of net gifts for years preceding the taxable years 1937 and 1943, the amounts shown in our findings as the net income of the trust paid to Alida during the years from June 6, 1932, to December 11, 1937, inclusive, constituted annual gifts by petitioner in those years.

*Decision will be entered under Rule 50.*

