The **NORTHERN TRUST COMPANY as Trustee Under Agreement No. 25,304 With Walter S. Carr Dated January 1, 1959, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 16377.**

United States Court of Appeals
Seventh Circuit.

Jan. 29, 1968.

Rehearing Denied March 8, 1968.

Sharon L. King, Marshall G. Sampsell, of Isham, Lincoln & Beale, Chicago, Ill., for appellant.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Richard C. Pugh, Meyer Rothwacks, Deene R. Goodlaw, Jonathan S. Cohen, Attorneys, Tax Division, Department of Justice, Washington, D. C., Edward V. Hanrahan, U. S. Atty., Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and KNOCH, Senior Circuit Judges.

KNOCH, Senior Circuit Judge.

In an action brought to recover excessive payment of federal estate tax, assessed interest plus statutory interest thereon, the District Judge denied summary judgment for plaintiff, The Northern Trust Company, as Trustee under Agreement No. 25,304 with Walter S. Carr dated January 1, 1959, and entered summary judgment in favor of the defendant, United States of America, from which this appeal has been taken on the ground that the defendant's motion for summary judgment raised a genuine issue of material fact.

The cause arose out of the following factual situation. The deceased Walter S. Carr had been an employee of the Locomotive Firebox Company (hereinafter sometimes called "Locomotive") from December 31, 1942, until its dissolution on December 31, 1951.

Locomotive had established service annuity or pension and profit-sharing plans effective December 31, 1942, both of which met the requirements of the predecessor of § 401(a), Internal Revenue Code of 1954, as qualified for the special income tax treatment of that section; all contributions to these plans were made solely by Locomotive.

Effective September 1, 1951, in anticipation of the dissolution of Locomotive, the plans were amended, after consultation with and approval by representatives of the Internal Revenue Service, to permit distribution to the participant employees in the form of a lump-sum cash payment, fully paid single-premium retirement annuity policies or a combination thereof, solely in the discretion of the three trustees, of whom the deceased Mr. Carr, incidentally, was one. Nevertheless, prior to the amendment each participant employee was sent a letter by Thomas Cluley Smith, actuary for Locomotive's plans, enclosing a blank form and requesting the participant to elect the manner in which he wished dis-

tribution of his interest. The decedent returned his election form in July, 1951, indicating his election to receive retirement annuity policies naming his son and daughter as beneficiaries.

On direction of one of the individual trustees (not the decedent) the corporate trustee purchased ten identical single-premium annuity contracts naming the decedent as annuitant, and his son and daughter as contingent beneficiaries. These contracts were assigned to the decedent who was 77 years old on January 18, 1952, the date of the contracts. He was to receive a life annuity with ten years' guaranteed payment beginning December 31, 1969, prior to which date he could convert each contract into a life annuity, a guaranteed-period life annuity, a refund annuity, or surrender the contract for cash. He died September 9, 1960, at the age of 86, never having exercised any of these rights. The con-

tracts had a cash surrender value of $81,-318.59, which was excluded from the gross estate on his federal estate tax return. On audit, the government included the amount of the cash surrender value. Plaintiff paid the resulting additional tax, filed timely claim for refund, and brought its action in the District Court. Both parties moved for summary judgment on the pleadings and stipulated facts.

The government contended in the District Court and in this Court that the cash surrender value was includable in the gross estate pursuant to the broad terms of § 2033, Internal Revenue Code of 1954, which provides that the value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

The plaintiff argued that § 2039(c),*

---

* § 2039. Annuities

(a) *General.*—The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

(b) *Amount includible.*—Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. For purposes of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement (whether or not to an employee's trust or fund forming part of a pension, annuity, retirement, bonus or profit sharing plan) shall be considered to be contributed by the decedent if made by reason of his employment.

(c) *Exemption of annuities under certain trusts and plans.*—Notwithstanding the provisions of this section or of any

provision of law, there shall be excluded from the gross estate the value of an annuity or other payment receivable by any beneficiary (other than the executor) under—

(1) an employees' trust (or under a contract purchased by an employees' trust) forming part of a pension, stock bonus, or profit-sharing plan which, at the time of the decedent's separation from employment (whether by death or otherwise), or at the time of termination of the plan if earlier, met the requirements of section 401(a);

(2) a retirement annuity contract purchased by an employer (and not by an employees' trust) pursuant to a plan which, at the time of decedent's separation from employment (by death or otherwise), or at the time of termination of the plan if earlier, was a plan described in section 403(a);

(3) a retirement annuity contract purchased for an employee by an employer which is an organization referred to in section 503(b) (1), (2), or (3), and which is exempt from tax under section 501(a); or

(4) chapter 73 of title 10 of the United States Code.

If such amounts payable after the death of the decedent under a plan described in paragraph (1) or (2), under a contract prescribed in paragraph (3), or under chapter 73 of title 10 of the United States Code are attributable to any extent to payments or contributions

the requirements of which had been met by the plans, provided a complete exclusion because the annuities were receivable by the beneficiary under an employees' trust forming part of a plan which at the time of the decedent's separation from his employment met the requirements of § 401(a) of the 1954 Code, the annuities being attributable solely to contributions made by the decedent's employer, and the decedent having died after December 31, 1953, thus fulfilling all the requirements of § 2039(c) (1), even though at the time of his death the decedent had the right to surrender the contracts for cash.

The government argues that these "annuities" were not true annuities but mere investment devices designed to permit the employee to avoid payment of income taxes on deferred compensation, noting that the periodic payments would not begin until decedent was 95 years old, and that he could surrender any or all of the contracts at any time at a guaranteed annual increment in value or convert them into immediately payable annuities. The government characterizes these contracts as sophisticated savings accounts.

The District Judge in his Memorandum Opinion and Order concluded that an issue of law existed as to whether or not § 2039(c) provided a complete exclusion, but determined, as we do, that this issue need not be decided because the plaintiff could not meet the provisions of the exclusion of § 2039(c). On the basis of the admitted facts, the decedent had constructively received his share of the proceeds of the plans prior to his death. The decedent elected the form of distribution. The plaintiff relies on the wording of the plans which provide that the form of distribution shall be solely in the discretion of the trustees. The plaintiff asserts that the employees had no legal right under the plans to control the distribution to them on the plan assets. However, neither of the other two trustees had an interest adverse to that of the decedent.

Thomas C. Smith, who was not a trustee, spoke, in his deposition, of the trustees having overridden the initial elections of two of the employees. He said he personally had nothing to do with the decision, but had seen the election forms and knew the form of distribution made. He had discussed the matters with Tobia R. Shiner, who was a trustee. However, no distributions were actually made without the consent of the individual employee according to the deposition of Trustee Shiner, who held various offices as an employee of Locomotive, and who was the decedent's financial advisor.

The District Judge held that "in matters of taxation it is the substance of what was done and not the form that controls," citing Commissioner of Inter-

---

made by the decedent, no exclusion shall be allowed for that part of the value of such amounts in the proportion that the total payments or contributions made by the decedent bears to the total payments or contributions made. For purposes of this subsection, contributions or payments made by the decedent's employer or former employer under a trust or plan described in paragraph (1) or (2) shall not be considered to be contributed by the decedent, and contributions or payments made by the decedent's employer or former employer toward the purchase of an annuity contract described in paragraph (3) shall, to the extent excludable from gross income under section 403(b), not be considered to be contributed by the decedent. This subsection shall apply to all decedents dying after December 31, 1953. For

purposes of this subsection, contributions or payments on behalf of the decedent while he was an employee within the meaning of section 401(c) (1) made under a trust or plan described in paragraph (1) or (2) shall be considered to be contributions or payments made by the decedent. For purposes of this subsection, amounts payable under chapter 73 of title 10 of the United States Code are attributable to payments or contributions made by the decedent only to the extent of amounts deposited by him pursuant to section 1438 of such title 10. Aug. 16, 1954, c. 736, 68A Stat. 384; Sept. 2, 1958, Pub.L. 85–866, Title I, §§ 23(e), 67(a), 72 Stat. 1622, 1658; Oct. 10, 1962, Pub.L. 87–792, § 7(i), 76 Stat. 830; Mar. 8, 1966, Pub.L. 89–365, § 2(a), 80 Stat. 33.

nal Revenue v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981 (1945). We agree with the District Court that the decedent in fact had an option to select the manner in which his interest in the plans would be distributed. The exclusion of § 2039(c) is not applicable. The cash surrender value of the annuity contracts were properly includable in decedent's gross estate as property owned by him at the date of his death. The decedent had unfettered control of his share of the plan assets. See Reinecke v. Smith, 289 U.S. 172, 177, 53 S.Ct. 570, 77 L.Ed. 1109 (1933); Witherbee v. Commissioner of Internal Revenue, 2 Cir., 1934, 70 F.2d 696, 697, cert. den. 293 U.S. 582, 55 S.Ct. 96, 79 L. Ed. 678, rehrg. den. 293 U.S. 631, 55 S.Ct. 138, 79 L.Ed. 716; New England Merchants Nat. Bank of Boston v. United States, 1 Cir., 1967, 384 F.2d 176.

■ The plaintiff asserts that even the defendant conceded that an issue of fact was involved in the theory of constructive receipt and that this cause ought therefore to be remanded to the District Court. The defendant's assertion that there was an issue of fact as to whether the decedent had an option to elect appears in its brief in opposition to the plaintiff's motion for summary judgment. The defendant went on to assert as a fact that the decedent did have such an option, listing in support thereof various items of evidence provided by the stipulations and depositions. Defendant's then view of this theory as turning on a disputed issue of fact was not binding on the District Court. At no point has there been any indication whatever as to what possible additional evidence beyond the stipulated facts and the statements in the depositions might be submitted on remand. See Sabin v. Home Owners' Loan Corp., 10 Cir., 1945, 151 F.2d 541, cert. den. 328 U.S. 840, 66 S. Ct. 1011, 90 L.Ed. 1615 (1946), rehrg. den. 328 U.S. 880, 66 S.Ct. 1362, 90 L.Ed. 1648; Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co., 6 Cir., 1943, 137 F.2d 871, 877, cert. den. 320 U.S. 800, 64 S.Ct. 431, 88 L.Ed. 483 (1944), rehrg.

den. 321 U.S. 803, 64 S.Ct. 634, 88 L.Ed. 1089. In the state of the record before us, we believe that the plaintiff must submit more than an unsupported assertion before this Court can conclude that there is something here which might require submission to a jury or to a Court sitting as a fact finder to justify a remand of this cause. Fishman v. Teter, 7 Cir., 1943, 133 F.2d 222. Cf. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944), rehrg. den. 322 U.S. 767, 64 S.Ct. 941, 88 L.Ed. 1593.

The judgment of the District Court is affirmed.

Affirmed.