**FIRST TRUST COMPANY OF SAINT PAUL, Martin P. Coonan, and Raymond F. Weidenborner, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 3–69 Civ. 176.

United States District Court,
D. Minnesota,
Third Division.

Nov. 18, 1970.

Paul C. Thomas and George C. King, of Thomas, King, Swenson & Collatz, St. Paul, Minn., for plaintiffs.

Johnnie M. Walters, Asst. Atty. Gen., and David A. Wilson, Jr., and Nestor M. Nichols, Attys., Dept. of Justice, Washington, D. C., and Robert G. Renner, U. S. Atty., Minneapolis, Minn., for defendant.

MEMORANDUM DECISION

NORDBYE, District Judge.

Plaintiffs bring this suit as executors of the Estate of Henry Edward Warren to recover a tax paid upon the amount of his interest in a profit-sharing trust which was on his death paid to his sister as the beneficiary of the decedent's interest in a pension plan of Warren-Cadillac, Inc. In the estate tax return the amount paid to Mr. Warren's sister was not included in that it was deemed excludable under Section 2039(c), 26 U.S. C.A., which was created by the 1954 Code and which reads, `

"(c) Exemption of annuities under certain trusts and plans.—Notwithstanding the provisions of this section or of any provision of law, there shall be excluded from the gross estate the value of an annuity or other payment receivable by any beneficiary (other than the executor) under—

"(1) an employees' trust (or under a contract purchased by an employees' trust) forming part of a pension, stock bonus, or profit-sharing plan which, at the time of the decedent's separation from employment (whether by death or otherwise), or at the time of termination of the plan if earlier,

met the requirements of section 401(a)."

The Government contends that the amount of the pension fund was includable in the gross estate of the decedent under Section 2033, 1954 Code. The tax was paid and this suit followed. The parties have stipulated that a claim for refund in the amount of $125,000, plus interest, was submitted on February 17, 1969.

The Government concedes that at the time of Mr. Warren's death the employees' profit-sharing plan in question met the requirements of Section 401(a), 26 U.S.C.A. This employees' profit-sharing plan was organized by Warren-Cadillac, Inc., of which company Mr. Warren was President and owned 97 per cent of the outstanding stock. It is the position of the Government that under the circumstances herein Mr. Warren had complete control of his interest in the plan and therefore it was includable in his gross estate; that is, the Government contends that because Mr. Warren had "unfettered control" of the plan, the doctrine of constructive receipt is applicable and therefore his interest in the pension trust should have been included in his estate.

Mr. Warren became 65 on September 28, 1956, and under the terms of the pension plan he had a right to withdraw his interest therein if he obtained the consent of the Administrative Committee. This committee consisted of three persons, one of whom was Mr. Warren. It was authorized to provide the rules and regulations which govern the handling of the plan, and one of its rules was that when an employee reached the age of 65 and continued working for the company, he could not withdraw his interest in the plan without the committee's consent; in other words, the committee intended that the benefits of the plan should inure to the employee after he had left the company by retirement or otherwise, and if he obtained the benefit of the trust while he was still working, even though he had reached the age of 65, there would be a tendency to dissipate the trust benefits which were intended to be available to the employee after his retirement. The facts indicate that there were a number of employees of the company who had reached 65 and continued to work for the company, none of whom had withdrawn their interest in the pension fund, and the committee at no time during the continuance of the plan had ever permitted any employee to withdraw any part of the fund after he had reached the age of 65 if he still continued his employment. A member of the committee testified that that rule was strictly adhered to and would have been applied to Mr. Warren if the question arose. However, the Government contends that the rule, although followed in all instances by the committee, was not enforcible as to Mr. Warren because as the owner of 97 per cent of the stock of Warren-Cadillac Co. and a member of the committee, by reason thereof he controlled the company, and it is contended that if he had demanded his interest in the pension fund, the Administrative Committee would have bowed to his request, and by reason of his alleged unfettered control on account of his ownership of the company, the doctrine of constructive receipt is applicable; in other words, that his interest in the pension fund inured to his benefit after he reached the age of 65 and should have been included as an asset in his estate. His interest in the pension fund amounted to $171,085.99, which as stated was paid after his death to his sister whom he had designated as his beneficiary of the pension trust. Mr. Warren's interest at all times in the pension plan remained intact and subject to the terms of the plan until his death.

Apparently both parties recognize that the doctrine of constructive receipt may be applicable under certain circumstances and there are a number of cases which have followed that doctrine in determining whether or not the interest of the decedent in any fund should be included in his gross estate for tax purposes. Plaintiffs, however, take the position that the doctrine is predominantly

a question of fact, while the defendant assumes to characterize it as a question of law in view of the admitted circumstances in this situation. That is, the defendant contends that in that Mr Warren had the power by his stock control to negate the refusal of the Administrative Committee's approval of his request to withdraw his interest in the fund when he reached the age of 65, the doctrine of constructive receipt arises as a matter of law.

The defendant relies primarily upon Northern Trust Co. v. United States, 7 Cir., 389 F.2d 731 (1968). There, one Mr. Carr was the employee involved in the plan. The company which established the plan dissolved on December 31, 1951. Before the dissolution became effective, and on September 1, 1951, in anticipation thereof, the pension plan was amended to permit distribution in the form of a lump sum cash payment, fully paid single premium retirement annuity policies, or a combination thereof. These distributions were to be determined solely at the discretion of the three trustees of whom Mr. Carr was one. Prior to the amendment above referred to, each participant employee was sent a letter by the company enclosing a blank form and requesting the participant to elect the manner in which he wished distribution of his interest. Apparently Mr. Carr had indicated his election under the plan as early as July, 1951, to receive retirement annuity policies naming his son and daughter as beneficiaries. Thereafter, the corporate trustees purchased ten identical premium annuity contracts naming Mr. Carr as the annuitant and his son and daughter as contingent beneficiaries. The contracts apparently were dated January 18, 1952, and were assigned to Mr. Carr, who at that time was 77 years of age. The interests were subject to surrender at any time for cash. The court stated, at p. 733,

> " * * * He was to receive a life annuity with ten years' guaranteed payment beginning December 31, 1969, prior to which date he could convert each contract into a life annuity, a guaranteed-period life annuity, a refund annuity, or surrender the contract for cash. He died September 9, 1960, at the age of 86, never having exercised any of these rights. The contracts had a cash surrender value of $81,318.59, which was excluded from the gross estate on his federal estate tax return."

In view of the admitted facts, the court stated, at p. 734, that

> "the decedent had constructively received his share of the proceeds of the plans prior to his death. The decedent elected the form of distribution."

And further, at p. 735,

> " * * * We agree with the District Court that the decedent in fact had an option to select the manner in which his interest in the plans would be distributed. The exclusion of § 2039(c) is not applicable. The cash surrender value of the annuity contracts were properly includable in decedent's gross estate as property owned by him at the date of his death. The decedent had unfettered control of his share of the plan assets."

Thus it will be seen that Mr. Carr in effect already had received the benefits of the pension trust before he died. That is, as the court stated, at p. 734, "at the time of his death the decedent had the right to surrender the contracts for cash." And at p. 735, he "had an option to select the manner in which his interest in the plans would be distributed."

The Court has given due consideration to the other cases submitted by the defendant, as well as those submitted by the plaintiffs, including In re Estate of Harold R. Brooks, reported in 50 Tax Court 585 (1968). Obviously, each case must be determined by its own set of facts and circumstances. In the Northern Trust Company case, the theory of constructive receipt as to Mr. Carr would be entirely in accordance with the purpose of the plan. In the Warren-Cadillac trust, the theory of constructive

receipt as to Mr. Warren would be contrary to the very basic principles thereof and do violence thereto.

There is no contention here that the pension plan was other than a bona fide attempt to carry out the terms thereof for the benefit of the employees of the company, including Mr. Warren. Obviously, he would have been confronted with the necessity of compliance with the terms of the plan applicable to all the employees who had reached 65 and had not retired. If he had assumed to demand and receive his interest in the pension fund at the age of 65 and thereby set a precedent by reason of his control of the company, the very purpose of the pension plan would have been destroyed. The record is clear that no one who had reached the age of 65 and who continued his employment with the company was permitted to withdraw his pension fund. The question, therefore, may be posed: Should we devise the theory of constructive receipt under the admitted circumstances in view of Section 2039(c) merely because Mr. Warren had the power to commit an act which would destroy a plan which he had caused to come into existence? There is an absence of any circumstances or conditions in the record which would suggest that Mr. Warren would willingly ruin that which he had created because obviously there could not be one rule for the owner of the company and another for a mere employee. Consequently, it may be reasonably concluded that after Mr. Warren became 65 years of age he would not have demanded his interest in the pension fund and that if he did, the Administrative Committee would not have bowed to his demands. Certainly, he did not need the money; he left an estate of four and one-half million dollars when he died in 1965, and it does not appear that taxwise his financial condition before his death would have been improved if he had withdrawn his interest in the pension fund. Moreover, if Mr. Warren had insisted on forcing the Administrative Committee to disobey its rules and pay his equity in the pension plan when he reached 65 and continued to work for the company, the Internal Revenue Service no doubt would have revoked its approval of the plan in that under those circumstances it would be conducted in violation of Section 401(a), Title 26, U.S.C.A., which provides that the plan shall be a qualified trust "if the contribution or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees or highly compensated employees."

Finally, it may be observed that under the circumstances herein merely because Mr. Warren had the right by his potential ability to destroy the pension plan, it does not mean that in the eyes of the law he had done so in order to give rise to the fiction of a constructive receipt. One may have unfettered control to commit a wrong, but it does not follow that, without more, in the eyes of the law that right gives rise to the doctrine that the wrongful act in effect had been done. A fair and realistic common sense consideration of the admitted facts herein strongly supports plaintiffs' contention that Section 2039, subsection (c), Title 26, U.S.C.A., excludes from Mr. Warren's gross estate the payments made from his pension plan to his sister in that the doctrine of constructive receipt is not applicable herein.

Findings of Fact and Conclusions of Law in accordance herewith, including a provision that this memorandum may be made a part thereof, may be submitted by the plaintiffs upon seven days' notice. Exceptions are reserved.