(No. 37658.—

DESSIE M. GRIFFIN *et al.*, Appellees, *vs.* PERRY GRIFFIN, Appellant.

*Opinion filed Sept. 27, 1963.—Rehearing denied Nov. 25, 1963.*

SCHAEFER, J., dissenting.

SUTHERLAND & SUTHERLAND, of Peoria, for appellant.

BERRY & O'CONOR, of Streator, for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The second paragraph of the will of Utelles H. Griffin provides: "I give, devise and bequeath to my beloved wife, Dessie M. Griffin, [legal description] consisting of 183 acres more or less to have, to use and enjoy the income her natural life, subject to the payment of the taxes, insurance, repairs and interest, if any, during that time; and at her death I give, devise and bequeath to my son, Stanley W. Griffin, this farm, subject to the same conditions mentioned above; at his death I give, devise and bequeath to the children of Stanley W. Griffin, in their own right the said farm of 183 acres; then at their death, the farm is to be sold and the proceeds divided equally between my brothers and sisters, Perry Griffin, Benjamin H. Griffin, Jessie M. Glover, Daisy L. Griffin, Ella O. Morphew, the children of my deceased brother, Charles E. Griffin and herself; the children of a deceased brother and sister are to take the parents' share equally."

The will was executed in 1955, the testator died in August 1960 and the will was thereafter admitted to probate in the probate court of La Salle County. Stanley is an only child of the testator and Thomas Griffin is the only child of Stanley. The widow, Stanley and Thomas instituted this action to have the quoted paragraph of the testator's will construed. Defendants, Perry Griffin, Benjamin

H. Griffin, Daisy L. Griffin and Ella O. Morphew, are the testator's living brothers and sisters who are named in the paragraph; defendants Maurine Weber and Viola Rowe are daughters of the testator's deceased sister Jessie Glover who is named in the paragraph; defendant Peggy Ann Beam is a granddaughter of Jessie Glover and daughter of Harold Glover who died in 1956 after his mother Jessie Glover; defendant Abbie Griffin is the widow of Charles E. Griffin the testator's deceased brother to whom reference is made in the paragraph, and defendant Irene Williams is the daughter of Charles E. Griffin. Perry Griffin filed his answer to the complaint. Maurine Weber and Viola Rowe each entered their written appearance in which they consented to the entry of any and all orders without notice and disclaimed any interest in the farm under the provisions of the will of the testator. A default order was entered against each of the other defendants.

The trial court construed the quoted paragraph as creating successive life estates in the widow and in the son Stanley and a vested remainder in fee in Stanley's son Thomas subject to be opened up for future children of Stanley; it found that the gift of a fee simple to the children of Stanley, subject to the prior life estates, was repugnant to the gift to the brothers and sisters or children of a deceased brother or sister and therefore the gift to the brothers and sisters or children of a deceased brother or sister was void; and it further found that since the sale of the farm might take place after the lapse of a period of time greater than a life or lives in being, plus 21 years, the provision for the sale of the farm and distribution of the proceeds among the brothers and sisters or children of a deceased brother or sister violates the rule against perpetuities and is therefore void. The court then decreed that the widow was the owner of an undivided ⅓ interest in fee in the farm by virtue of her renunciation of the will; that the grandson Thomas is the owner of an undivided ⅔

interest in fee subject to his father's life estate and subject to be opened for future children of the father, and that the defendants have no right, title or interest in the farm.

A freehold being involved, Perry Griffin appealed directly to this court. The other defendants have not joined in the appeal.

The parties agree that the paragraph in question created successive life estates in the widow and Stanley. The defendant argues, however, that the trial court erred in construing the phrase "to the children of Stanley W. Griffin, in their own right" as creating a fee-simple estate in the children subject to the prior life estates. He argues that the phrase "in their own right" is of no legal significance and could apply to the creation of a life estate as well as a fee interest and that the phrase "at their death" shows that the testator intended to create a life interest in the children of Stanley.

A considerable number of cases have come before this court where an estate is given to one person in general terms without express language, such as "for life" or "in fee simple", defining the estate in the first taker followed by subsequent language in the same or another sentence, paragraph or clause of the will giving the property to another "when", "at", or "on" the death of the first taker. This court, in applying the simple rule of interpretation that an instrument will be given effect in all its parts, has viewed the ambiguous character of the first limitation in such a manner that the second limitation can also be given effect, and held that the first limitation creates a life estate, since to hold otherwise would make all the language of the gift over meaningless. (See *e.g. Hoge* v. *Hoge*, 17 Ill.2d 209; *Knisely* v. *Simpson*, 397 Ill. 605; *Scott* v. *Crumbaugh*, 383 Ill. 144; *Keiser* v. *Jensen*, 373 Ill. 184.) There are, however, a few cases where this court has held that the gift to the first taker in words other than "in fee simple" created a fee and that subsequent language merely showed

how the testator wished the first taker would dispose of the property upon the first taker's death, (see *e.g. Edgar County Children's Home* v. *Beltranena*, 402 Ill. 385; *Carrico* v. *Barker*, 408 Ill. 182); and in a very early case where a gift to the wife in "fee simple absolute" was followed by the provision "until the expiration of her life" with a gift over, this court held the wife took only a life estate. (*Siegwald* v. *Siegwald*, 37 Ill. 430.) These few cases departing from the general rule may be deemed as limited to their particular factual situations.

A gift to one person in general terms followed by a gift over at the death of the first taker is a common practice of draftsmen unskilled in the art of drafting wills. There can be little doubt that the testator in most of these situations intended the first taker to have only a life estate. It must be remembered, however, that the intent of the testator as manifested, either expressly or by necessary implication, from the language of the will is controlling.

Here we have a testator who gave the income from his 183-acre farm to his wife for her life and at her death to his son "on the same conditions". The parties agree that this was a clear expression of his intent to create a life estate in his wife followed by a life estate in his son. At the death of his son he provided that the farm should go to the children of his son "in their own right." While the gift to his grandchildren is made in general terms with a gift over "at their death", this will differs from the many where it was held that the necessary implication of the gift over showed the testator's intent to create a life estate in the first taker in that the testator here expressly created two prior life estates. The gift to his son was made "on the same conditions" as the gift to the widow, but the gift to the grandchildren was made "in their own right". The clear implication raised by the difference in language used to make the gift to the son and to the grandchildren

is that he intended to create something other than a life estate in the grandchildren, namely, a fee interest.

We cannot agree with the plaintiffs, however, that the grandchildren have a fee simple absolute subject to the prior life estates. To hold that they had such an interest would render meaningless all the language of the gift over "at their death". On the other hand, we cannot agree with the defendant that the grandchildren have only a life estate. To hold that they had such an interest would be to ignore the clear implication that the testator intended to create a fee interest in them. While the testator did not use express language to manifest his intent, the plain implication is that he intended to make the gift over of a fee interest to his brother and sisters or the children of a deceased brother or sister substitutionary to the gift of a fee interest in the grandchildren.

This conclusion is further supported by the fact that a life estate was created in a person of the first generation, followed by a life estate to a person of the second generation, followed by a gift to members of the third generation and then a gift over to persons of the first generation. The testator could not reasonably expect his brothers and sisters, who range in age from 72 to 80 years, or even the children of deceased brothers and sisters, to come into possession and enjoyment of their gift if the children of Stanley lived normal life expectancies, Thomas Griffin now being only 23 years old. The testator could, however, reasonably expect the possibility of his brothers and sisters still being alive, and the stronger possibility of the children of a deceased brother or sister being alive at the time their gift became possessory if the children of Stanley would die before their gift became possessory. Furthermore, if the testator's grandchildren were held to hold only a life estate rather than a fee interest the descendants of brothers and sisters would be favored over his own

descendants, which is contrary to human nature. That his brothers and sisters or their children should enjoy the proceeds of the sale of the farm and probably would be alive to enjoy them if the grandchildren were not alive to enjoy their gift, when it became possessory, is in harmony both with human nature and reasonable expectations.

As we have pointed out, this court has generally held that the necessary implication of a gift to one followed by a gift over "when", "at" or "on" the death of the first taker is that the first taker has a life estate. On the other hand, a gift over "in the event", "in case", or "if" the first taker dies does not generally show an intent to create a life estate in the first taker but shows an intent to substitute the second taker for the first taker if the first taker dies before the testator, the life tenant or some other time fixed for substitution. (*Mitchell* v. *Snyder,* 402 Ill. 279.) While the testator here used the phrase "at their death" rather than "in the event of their death", we believe, in view of the fact that he made the gift to the children of Stanley "in their own right" rather than "subject to the same conditions," as the gift to his wife and to his son Stanley, and the fact that the gift over is to persons who are two generations older than such children, that the testator intended the gift to his brothers and sisters or the children of a deceased brother or sister to be substitutionary to the gift to the children of his son Stanley. By treating the interest of the children of Stanley as a remainder, with the gift over to brothers and sisters or children of a deceased brother or sister as substitutionary to the gift to Stanley's children, all the terms of the will become consistent and meaningful.

Unless a contrary intent appears from the language of the will, we have held that in cases where there is a gift for life, followed by a gift in remainder, which is followed by a substitutionary gift over upon the "death" of one or more remaindermen, the word "death" is referable to a death prior to the supporting estate. (*O'Connell* v. *Gaff-*

*ney,* 23 Ill.2d 611; *Phelps* v. *Seeley,* 3 Ill.2d 210; *Harris Trust & Savings Bank* v. *Jackson,* 412 Ill. 261.) Thus, those children of Stanley who are alive at the time their gift becomes possessory will take the farm to the exclusion of the testator's brothers and sisters or the children of a deceased brother or sister.

. . The gift in remainder to the children of Stanley with the gift over in remainder to the testator's brothers and sisters or children of a deceased brother or sister might be regarded as creating alternative contingent remainders or as creating a remainder in fee vested at the death of the testator in the child of Stanley *in esse,* subject to open up to let in afterborns of Stanley, and further subject to be divested in favor of the testator's brothers and sisters or children of a deceased brother or sister by the death of the child of Stanley *in esse* and afterborns of Stanley before the death of their father. (See generally, Carey and Schuyler, Illinois Law of Future Interests, secs. 159, 300, 302 and 307.) In *Furnish* v. *Rogers,* 154 Ill. 569 and *Hill* v. *Hill,* 264 Ill. 219, where there was a gift to one for life, remainder to his children, with a gift over on the life tenant's death without children surviving, this court held that alternative contingent remainders had been created, neither of which would become vested until the death of the life tenant; although there were children *in esse* before the death of the life tenant. Although these holdings were seriously questioned by Professors Carey and Schuyler in their original work on the subject of future interests (see Carey and Schuyler, Illinois Law of Future Interests (1941), sec. 307,) this view was later approved (see Carey and Schuyler, Illinois Law of Future Interests, Cumulative Pocket Part, (1954) sec. 307) after this court's decision in *Trabue* v. *Gillham,* 408 Ill. 508. We hold that alternative contingent remainders were created, and that those to take upon the death of the life tenant Stanley must be ascertained at that time. Since title will vest in either of the contingent alterna-

tive remaindermen, if at all, at the death of the last life tenant, the rule against perpetuities is not violated.

The "children of Stanley W. Griffin" designates, of course, the immediate offspring of Stanley and does not include grandchildren or more remote issue of Stanley. (*Watterson* v. *Thompson*, 404 Ill. 515.) If the child or children of Stanley are not living at the time of their father's death, the farm is to be sold and the proceeds distributed equally among the testator's named brothers and sisters and "the children of his deceased brother, ·Charles E. Griffin and herself." Since this gift over is to named individuals and to the children of another, the children of Charles are considered as a class and would take equally with the named brothers and sisters *per stirpes* ·and not *per capita.* (*Schroeder* v. *Benz,* 9 Ill.2d 589; *Beal* ·v. *Higgins,* 303 Ill. 370.) Thus, the proceeds of the sale of the farm for the remainderman's ⅔ interest would be ·divided into six equal parts. If the named brother or sister is not alive to take his or her ⅙ part, the living children ·of the deceased brother or sister would take their parents ⅙ share.

What we have just said must be qualified, however, ·because of the decree entered by the trial court and the failure of all the defendants except Perry Griffin, to appeal. ·As we pointed out earlier, the trial court held that none of the defendants have any right, title or interest in the farm ·under the provisions of the will. The interests of those ·persons who were made parties to this action and who did not appeal are settled and determined by the decree of the ,trial court. *Gochenour* v. *Logsdon,* 375 Ill. 139; *Kinne* v. *Duncan,* 383 Ill. 110; *Lee* v. *Roberson,* 297 Ill. 321.

.· There is, of course, a reversion in fee created by operation of law as a result of the life estate and alternative contingent remainders created under the will. (*Gridley* v. ·*Gridley,* 399 Ill. 215; *Fisher* v. *Easton,* 299 Ill. 293.) This reversion is undisposed of under the paragraph in question

and would pass under a residuary clause of the will. (*Gridley* v. *Gridley,* 399 Ill. 215.) This will contains no residuary clause and there is, therefore, a reversion in the heirs of the testator.

The decree of the circuit court of Marshall County is reversed and the cause is remanded for the entry of a decree consistent herewith.

*Reversed and remanded, with directions.*

Mr. Justice Schaefer, dissenting:

I agree with the opinion of the court that the testator intended to give a life estate to his wife, followed by a life estate to his son Stanley, followed by a remainder in fee to Stanley's children. But in my opinion the remaining provision for sale of the farm at the death of Stanley's children, and distribution of the proceeds to the testator's brothers and sisters or their children, is repugnant to the preceding fee interest and also violates the rule against perpetuities. The trial court so concluded. I think that conclusion was correct, and that the decree should be affirmed.

The opinion of the court treats the gift to Stanley's children and the gift to the testator's brothers and sisters and their children as alternative contingent remainders. This construction was not suggested by the parties either in the trial court or in this court. The testator could conceivably have intended such a disposition, but I find nothing in what he said to suggest such an intent, and much to suggest the contrary. He dealt with the death of his son Stanley, and provided that "at his death" Stanley's children were to have the farm "in their own right." He dealt with the death of Stanley's children, and provided that "then at their death" the farm was to be sold and the proceeds distributed to his brothers and sisters and their children. The only meaning that I can see in this language is that the testator regarded the death of his son, and the death of his son's children, as separate in point of time. The

opinion of the court reads the second of the two phrases, "at his death", and "then at their death" to mean "in the event that they die before he dies."

Apart from the fact that this reading results in potential intestacy on the part of a testator whose only sin seems to have been overanxiety to be sure that his will disposed of all of his property, the simple language of the will does not support the labored construction it has received. That construction depends largely upon the fact that the widow has renounced the will, a circumstance that has nothing to do with the intention of the testator. Absent renunciation, her life estate might continue beyond the death of her son. The provision for the sale of the farm at the son's death, which the opinion of the court has written into the will, would then supply a new inconsistency.

Stanley's son, Thomas, was 23 years old when the case was tried. If the deaths in the family follow the orderly pattern that the opinion of the court seems to anticipate, no great practical harm is likely to result from the court's construction. But if Thomas should have a child and then predecease his father, the farm would not go to the testator's great grandchild, but to the testator's brothers and sisters and their children.