The NEW ENGLAND MERCHANTS NATIONAL BANK OF BOSTON, Executor u/w Martha A. Alford, Plaintiff, Appellant,

v.

UNITED STATES of America, Defendant, Appellee.

No. 6929.

United States Court of Appeals First Circuit.

Oct. 17, 1967.

Samuel B. Potter, Boston, Mass., with whom Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass., was on brief, for appellant.

Robert H. Solomon, Atty., Dept. of Justice, with whom Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Attys., Dept. of Justice, Paul F. Markham, U. S. Atty., and Joseph A. Lena, Asst. U. S. Atty., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

■ This is an appeal by the bank executor of a decedent's estate from a district court judgment for the government in a suit for refund of estate tax. The issue is whether a 1908 pre-tax statute trust fund is includible in the decedent's estate, under section 2038 of the Internal Revenue Code of 1954 and the relevant regulations,[1] by reason of a reserved power of alteration shared by decedent and the institutional trustee. We hold that it is and affirm the judgment of the district court.

The trust instrument was executed in 1908, antedating the predecessor of section 2038 by 16 years. Decedent, her mother, and brother were the settlors and life beneficiaries. On the death of the first of them, one-third of the corpus was to pass either as directed by that decedent's testamentary power of appointment, or, in default of the exercise of such power, to that decedent's heirs by blood. On the death of the second settlor, one half of the remaining corpus was to pass under the same alternative modes of disposition. And on the death of the surviving settlor, the remaining corpus was similarly to pass either by testamentary power of appointment or, in default of such exercise, to that settlor's heirs by blood. The three settlors, their survivors, or survivor had the power, with the written "consent and approval" of the bank trustee, to "vary or modify" the terms of the trust. The appointment of successor trustees was circumscribed only by excluding any beneficiary's husband. The bank trustee was given full powers of management.

From 1908 to 1929 all three settlor-beneficiaries were living. In 1929 decedent's mother died, disposing of her share by will. Decedent's brother served as co-trustee from 1908 to 1940, when he died without exercising his power of appointment. Decedent was the sole surviving settlor-beneficiary, and the bank the sole trustee, from 1940 to her death in 1961. In 1947 she irrevocably released her power of appointment but no change was ever made in any provision of the trust instrument. On her death the remaining corpus of the trust became distributable to her sole heir by blood.

■ The precise question litigated here is whether, the trust having been created long before the relevant taxing statute, it can be said that a gift was then so "made and completely vested",

---

1. 26 U.S.C. § 2038:

"(a) In general.—The value of the gross estate shall include the value of all property—

     *     *     *     *     *

"(2) *Transfers on or before June 22, 1936.*—To the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * *."

26 C.F.R. § 20.2038–1(d):

"(d) * * * if an interest in property was transferred by a decedent before the enactment of the Revenue Act of 1924 (June 2, 1924, 4:01 p.m., eastern standard time), and if a power reserved by the decedent to alter, amend, revoke, or terminate was exercisable by the decedent only in conjunction with a person having a substantial adverse interest in the transferred property, or in conjunction with several persons some or all of whom held such an adverse interest, there is included in the decedent's gross estate only the value of any interest or interests held by a person or persons not required to join in the exercise of the power plus the value of any insubstantial adverse interest or interests of a person or persons required to join in the exercise of the power."

Welch v. Henry, 305 U.S. 134, 147, 59 S.Ct. 121, 83 L.Ed. 87 (1938), that subjecting such a transfer to taxation under later law offends the due process clause of the Fifth Amendment, Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184 (1927). We would not have thought that the taxability of the power reserved in this trust, even though created before the statute, would today be open to serious question.

To be sure, this was not always so. In 1928, the Court in Saltonstall v. Saltonstall, 276 U.S. 260, 48 S.Ct. 225, 72 L.Ed. 565, upheld the application of a Massachusetts inheritance tax to a pre-statute trust which had reserved a revocation power to a settlor acting with the consent of the trustee, not on the ground that the settlor had retained a taxable power of control, but on the ground that what was taxed was the right of succession, which right matured only on the settlor's death. In the following year Mr. Justice Stone, the writer of *Saltonstall*, acknowledged in Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405 (1929), that the distinction was important in *Saltonstall*, for "it was at least doubtful" that a shared power with a trustee would have subjected the estate to a later transfer tax. To support this caveat, he cited Reinecke v. Northern Trust Co., 278 U.S. 339, 48 S.Ct. 436, 72 L.Ed. 997 (1929), decided the same day as *Chase*, which he also wrote. *Northern Trust* did not concern a power of control shared with a trustee but rather two trusts revocable by the settlor alone and five trusts where the settlor's revoking power was in each case subject to consent of either a sole beneficiary or a majority of beneficiaries. The former were held subject to a post-trust tax statute; the latter, not—because of the necessity for the settlor to

secure the consent of a "beneficial, and consequently adverse" interest should he have wished to revoke. 278 U.S. at 346, 48 S.Ct. 436. As of 1929, therefore, one could not predict whether or not a trustee would be considered to have an "adverse" interest sufficient to immunize a transaction from susceptibility to subsequently authorized taxation.

By 1933, however, the Court took the additional step in Reinecke v. Smith, 289 U.S. 172, 53 S.Ct. 570, 77 L.Ed. 1109. That case involved the taxability of trust income, under a post-trust statute, where the settlor retained the right to alter each of several trusts with the consent of the corporate trustee. The Court said, " * * * the trustee is not a trustee of the power of revocation and owes no duty to the beneficiary to resist alteration or revocation of the trust." 289 U.S. at 176, 53 S.Ct. at 572.[2] The Court was not confining its reasoning to the arbitrariness of prospective income tax enforcement in ruling out a settlor-designated trustee as having an adverse interest or to the non-retroactivity of taxing income accruing after the effective date of the statute. It said, "As pointed out in Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748, the same considerations as to ownership and control affect the power to impose a tax on the transfer of the corpus and upon the income." 289 U.S. at 176, 53 S.Ct. at 572.

We have long ago impliedly recognized the relevance of the quoted language in Reinecke v. Smith to estate tax cases. Welch v. Terhune, 126 F.2d 695, 697–98 (1st Cir. 1942). The Second Circuit relied early on Reinecke v. Smith to support the estate taxability of a similar pre-statute trust containing a reserved power of amendment shared with a trustee. Witherbee v. Commissioner, 70 F.2d 696

2. It is true that in Reinecke v. Smith the grantor and trustees had in fact joined in an amendment to the detriment of grantor's wife, the beneficiary of one of the trusts. This fact perhaps influenced the Court to make a generalization which might not today govern trusts containing standards by which the reasonableness of the trustee's judgment in consenting to revocation might be tested. See Restatement (Second) of Trusts § 330, comment *l* (1959). But, as we shall note, infra, there is no reason to suspect that the holding of *Reinecke* does not still apply to trusts similarly devoid of limitations on the trustee's discretion.

(2d Cir.), cert. denied, 293 U.S. 582, 55 S.Ct. 96, 79 L.Ed. 678 (1934).

Appellant, 34 years after Reinecke v. Smith and 33 years after Witherbee v. Commissioner, has invoked the full range of advocatory ingenuity to attempt to carry its considerable burden. It has seized on Mr. Justice Stone's reservation in *Chase*, and tried to elevate that 38 year old dictum into current law, despite *Reinecke v. Smith*. It has accepted the misconstruction of Reinecke v. Northern Trust in Mackay v. Commissioner, 94 F. 2d 558 (2d Cir. 1938), where the court erroneously assumed that the seventh trust could be amended without the consent of those having a beneficial interest in it. Consequently, appellant argues that the regulation (§ 20.2038–1) goes beyond the case law it attempts to codify by requiring, for exemption, that a party sharing power to revoke with the settlor have a "substantially adverse interest".

Appellant has also sought to confine the rationale of Reinecke v. Smith to the prospective impact of income tax cases despite the language of the Court cited above. And it has attempted to diminish the authority of Witherbee v. Commissioner by assuming that the ground relied on in Witherbee to justify the retroactive imposition of tax was abandoned by a later decision in the same circuit. Mackay v. Commissioner, supra.

This observation invites us to examine both cases. In *Witherbee* the court first held that a settlor's power, shared only with trustees, to take back trust property was significantly different from a power shared with beneficiaries as in Reinecke v. Northern Trust. In other words, the gift in trust was held to be sufficiently incomplete to be deprived of immunity against retroactive legislation. The court, however, apparently not recognizing that it had already answered the constitutional challenge to retroactive application of the statute, proceeded to deal with this challenge by observing that the settlor had ample opportunity to avoid taxation of the trust by relinquishing his reserved power after the new law took effect. This rationale appellant terms "the notice doctrine". We do not consider it an independent ground for justifying retroactivity. A gift is either "vested and complete" before a statute is passed, or it is not. If it is not complete, the fact that tax consequences can be avoided by later relinquishing reserved powers is merely a factor which minimizes the harshness of retroactivity, but is not its justification. What we have observed does not in any way question the soundness of the basic holding.

Nor does *Mackay*. In that case the trust came clearly within Reinecke v. Northern Trust Co., being subject to revocation by the settlor with the consent of a trustee who was also a beneficiary. Since it was not taxable, there was no occasion to make any observation as to the settlor's opportunity to avoid taxation by relinquishing his power. The dissenter, on whom appellant relies for the proposition that "the notice doctrine" has been repudiated, was merely arguing that the trust corpus was taxable, since (in his view) the trustee-beneficiary did not have a sufficiently adverse interest and that the settlor had ample opportunity to relinquish his power. 94 F.2d at 562–563. It is difficult to see how this case supports appellant's rather large claims for it.

Appellant also initially attacked Treasury Regulation § 20.2038–1 as going beyond the cases. Then, because appellee properly pointed out in its brief that since the regulation applied only to powers reserved by a decedent, it had nothing to do with powers stemming from a source *dehors* the initial reservation, as in Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76 (1935) and in White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80 (1935), appellant concluded that the regulation did not apply to the case at bar. While it is perfectly true that, until 1940, the existence of other beneficiaries constituted the classical Reinecke v. Northern Trust adverse interest, it is also true that the eventual concentration of power in the surviving settlor with trustee consent stemmed "from the creat-

ing instrument". Larson v. Commissioner, 213 F.2d 502, 503 (2d Cir. 1954).

As another arrow in its quiver, appellant relied on Erskine v. White, 43 F.2d 765 (D.Mass.1930), aff'd White v. Erskine, 47 F.2d 1014 (1st Cir. 1931). In this case we flatly held that a trustee was not a rubber stamp for revocation purposes and that it therefore was a sufficiently adverse party. But this arrow, even if it was ours, had but a short flight. In the only other federal court case to cite it, Brady v. Ham, 45 F.2d 454, 457 (1st Cir. 1930), Judge Anderson, in concurring, prophetically worried whether it would remain the law. It came to earth in 1933, with Reinecke v. Smith. Accord, Welch v. Terhune, supra.

There remains after this welter of case analysis the basic question whether today a corporate fiduciary's duties have been so enlarged, either generally or by the specific trust instrument, as to take it out of Reinecke v. Smith. While the corporate trustee was given broad powers as "managing trustee", we cannot say that, insofar as revocation is concerned, there was any standard which either expressly or by implication would justify it in opposing the settlor—any more than in Reinecke v. Smith, Welch v. Terhune, or Witherbee v. Commissioner. See n. 2, supra.

Appellant has challenged the language we have quoted from Reinecke v. Smith as "not a wholly accurate statement of the law of trusts", citing Restatement (Second) of Trusts § 330, comment *l* (1959). Apart from the effect of standards explicit in the trust which might, in a given case, enable a court to measure the reasonableness of a trustee's judgment as to revocation, the Restatement comment contemplates two other situations. The first is a situation where, despite the absence of specific standards, a trustee power to consent to revocation may be interpreted to be subject to the "wise" exercise of discretion; e. g., if a settlor were bent on cutting off dependent beneficiaries and dissipating the property. Absent any express or implied restrictions, the trustee could still be re-strained from acting dishonestly, arbitrarily, or with an improper motive. Restatement (Second) of Trusts § 187, comments *f–h* (1959). Assuming that these observations reflect the law, we nevertheless conclude from the record of this case that such possibilities of non-consent to revocation by the trustee fall short of creating a "substantial" adverse interest. Appellant has not been able to cite to us any other authority indicating that on this point of consent to alterations or revocation the corporate trustee's duty today differs from that prevailing at the time of these cases. See 3 Scott, Trusts, § 330.9 (2d ed. 1956); State Tax Commission v. Fitts, 340 Mass. 575, 580, 165 N.E.2d 586 (1960); Dewey v. State Tax Commission, 346 Mass. 43, 46, 190 N.E.2d 203 (1963).

Turning to the specific instrument, appellant has tried to equate the trust at issue with one in contemplation of marriage, by reason of the provision barring a husband of a beneficiary from appointment as a trustee. Suffice it to say that we do not find sufficient evidence in this trust instrument to hold, as a matter of law, that it was one executed in contemplation of marriage.

Affirmed.