ESTATE OF JANICE MCNEAR TOWLE, THE FIRST NATIONAL BANK OF CHICAGO, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2142–68.  Filed February 26, 1970.

*Charles R. Sprowl* and *Richard A. Beck*, for the petitioner.
*Sheldon S. Rosenfeld* and *Lewis M. Porter, Jr.*, for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent has determined a deficiency in petitioner's estate tax of $27,920.45. The sole issue for our determination is whether the proceeds of certain insurance settlement contracts over which the decedent possessed a power of appointment with the consent of a trustee are excludable from her gross estate.

All of the facts are stipulated and are found accordingly.

Petitioner, the executor of the Estate of Janice McNear Towle, maintained its principal place of business in Chicago, Ill., at the time of filing the petition herein. The estate tax return was filed with the district director of internal revenue, Chicago, Ill. It showed a total gross estate of $116,607.76 and allowable deductions of $12,663.36.

The decedent, Janice McNear Towle, died on October 14, 1964. At the time of her death, she was the income beneficiary of three post-October 21, 1942, settlement contracts of insurance on the life of her then deceased father, Charles W. McNear. The contracts accorded the petitioner two further rights: (1) A noncumulative privilege to withdraw $13,500 per year from the principal [1] and (2) the privilege (unexercised at the date of death) of withdrawing at any time all of the then retained principal, which aggregated $116,512.54 at the time of her death, with the consent of the First National Bank of Chicago (hereinafter First National) in its capacity as trustee under the will of Charles W. McNear. Upon the decedent's death, any remaining principal was payable to the bank as such trustee.

The will of Charles W. McNear, executed on December 19, 1952, bequeathed his residuary estate to First National as trustee, with his daughter (the decedent herein) as the beneficiary of the entire income

---

[1] The amount thus subject to withdrawal is not in issue herein.

and his grandson, Charles McNear Towle (the son of the decedent herein), and his sister, Belle McNear, contingent income beneficiaries. The grandson or his descendants were the primary beneficiaries in remainder.

After the main dispositive clauses, the will of Charles W. McNear specified:

5. Under * * * certain settlement contracts I now have * * * respecting insurance policies upon my life * * * it is provided that my daughter, JANICE McNEAR TOWLE, may draw down in one lump sum all of the principal sum retained by said insurance company under said contracts provided The First National Bank of Chicago consents and participates in such withdrawal; and that, at the death of the last survivor of me, my said daughter or my wife, Marie M. McNear, the pricipal sum then retained by the insurance company shall be paid to the First National Bank of Chicago, as trustee.[2]

Should The First National Bank of Chicago as trustee hereunder ever receive any funds pursuant to any of the foregoing settlement contracts, I direct that those funds be added to and made a part of the principal of the testamentary trust hereby created by this Article IV of my Will and be thereafter dealt with and administered by the trustee upon all of the trusts herein set out, and I hereby give said trustee the same duties, rights, power, titles, privileges, discretions and authorities respecting any and all such funds as it has hereunder respecting the property originally received by it under this residuary Article IV.

Immediately following was a further provision:

6(a). My daughter, JANICE McNEAR TOWLE, shall have the right to withdraw up to Five Thousand Dollars ($5,000) from the principal of the trust estate in each calendar year, provided that at the time of the making thereof any such withdrawal does not reduce the market value of the principal of the trust estate below Fifty Thousand Dollars ($50,000). This annual right of withdrawal shall be noncumulative * * *.

(b) Should the net income payable hereunder (or in the case of my daughter, JANICE McNEAR TOWLE, should the net income together with principal withdrawals made by her under the preceding subparagraph) at any time or times be insufficient, in the opinion of the trustee, for the support, comfort, maintenance or education of the beneficiary then entitled to receive such income, or any part thereof, then the trustee shall pay to or spend for said beneficiary such sums from the principal of the trust estate as, in the sole discretion of the trustee, may be necessary for such purposes, and this discretion given to the trustee shall be absolute and not subject to questions by any beneficiary of the trust.

Charles McNear Towle, who was born on February 15, 1932, survived his mother, Janice McNear Towle. Belle McNear, the sister of Charles W. McNear, died on August 10, 1959. Marie M. McNear, the wife of Charles W. McNear, died on March 25, 1951.

Upon the death of decedent, the principal retained under the insurance settlement contracts was collected by First National and added to the principal sum of the residuary trust, the income of which has since been distributed to Charles McNear Towle.

---

2 This provision is inconsistent with the terms of two of the settlement contracts, which provided for such payment upon the death of Janice McNear Towle, the decedent herein, but such inconsistency has no bearing on the issue before us.

Petitioner makes a two-pronged argument to support its contention that the power of withdrawal by the decedent of the entire proceeds of the insurance settlement contracts was not a general power of appointment within the meaning of section 2041(b)(1) and that therefore the amount of those proceeds, in excess of that subject to the noncumulative annual right of withdrawal, is not includable in the decedent's gross estate under section 2041(a).[3]

The first prong is developed along the following lines: (1) First National, albeit concededly as a trustee, held a direct remainder interest under the insurance settlement contracts and consequently had an "interest in the property, subject to the power"; (2) because of the fiduciary duty imposed upon First National to protect the interests of the remaindermen of the residuary trust under the will of Charles W. McNear, its "interest" was "substantial" and "adverse"[4] within the meaning of subsection (C) (ii) of section 2041 (b)(1); and (3) First National was simply an agent of the grandson remainderman whose interest was undeniably substantial and adverse to that of the decedent. We disagree.

As a general rule, the interest of a nonbeneficiary trustee is neither substantial nor adverse. *Reinecke* v. *Smith*, 289 U.S. 172 (1933), so holds with respect to the income tax and its principles are fully applicable to the estate tax. *Northern Trust Co.* v. *United States*, 389

---

[3] All references, unless otherwise specified, are to the Internal Revenue Code of 1954, as amended.
SEC. 2041. POWERS OF APPOINTMENT.
    (a) IN GENERAL.—The value of the gross estate shall include the value of all property—

        *        *        *        *        *        *

    (2) POWERS CREATED AFTER OCTOBER 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942 * * *
    (b) DEFINITIONS.—For purposes of subsection (a)—
    (1) GENERAL POWER OF APPOINTMENT.—The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—
        (A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment.

        *        *        *        *        *        *        *

    (C) In the case of a power of appointment created after October 21, 1942, which is exercisable by the decedent only in conjunction with another person—

        *        *        *        *        *        *

    (ii) If the power is not exercisable by the decedent except in conjunction with a person having a substantial interest in the property, subject to the power, which is adverse to exercise of the power in favor of the decedent—such power shall not be deemed a general power of appointment. * * *
[4] Petitioner makes no claim that its financial interest, derived from its prospective administration of any insurance proceeds with the resulting administration charges, constitutes a substantial adverse interest. See *Miller* v. *United States*, 387 F. 2d 866, 870 (C.A. 3, 1968), reversing 267 F. Supp. 182 (W.D. Pa. 1967), holding that a right of compensation for serving as trustee is not a substantial adverse interest within the meaning of sec. 2041(b)(1)(C)(ii).

F. 2d 731 (C.A. 7, 1968); *New England Merchants Nat. Bank of Boston* v. *United States*, 384 F. 2d 176 (C.A. 1, 1967); *Welch* v. *Terhune*, 126 F. 2d 695 (C.A. 1, 1942); *William R. Steward*, 28 B.T.A. 256 (1933), vacating 27 B.T.A. 593 (1933), affirmed sub nom. *Witherbee* v. *Commissioner*, 70 F. 2d 696 (C.A. 2, 1934). This conclusion is further supported by the following statement in the committee reports which accompanied the original enactment of the pertinent portion of section 2041, as an amendment to section 811(f) of the 1939 Code, by the Powers of Appointment Act of 1951, 65 Stat. 91:

a future joint power is totally exempt if it is not exercisable by the decedent except with the consent or joinder of a person having a substantial interest, in the property subject to the power, which is adverse to the exercise of the power in favor of the decedent, his estate, his creditors, or the creditors of his estate. A taker in default of appointment has an interest which is adverse to such an exercise. Principles developed under the income and gift taxes will be applicable in determining whether an interest is substantial and the amount of property in which the adversity exists. A coholder of the power has no adverse interest merely because of his joint possession of the power nor merely because he is a permissible appointee under a power, since neither the power nor the expectancy as appointee is an "interest" in the property. * * * [See H. Rept. No. 327, to accompany H.R. 2084 (Pub. L. 58), 82d Cong., 1st Sess., pp. 5-6 (1951); S. Rept. No. 382 to accompany H.R. 2084 (Pub. L. 591), 82d Cong., 1st Sess., p. 5 (1951).]

In *Reinecke* v. *Smith, supra,* the Supreme Court stated:

In approaching the decision of the question before us it is to be borne in mind that the trustee is not a trustee of the power of revocation and owes no duty to the beneficiary to resist alteration or revocation of the trust. Of course he owes a duty to the beneficiary to protect the trust *res*, faithfully to administer it, and to distribute the income; but the very fact that he participates in the right of alteration or revocation negatives any fiduciary duty to the beneficiary to refrain from exercising the power. * * * [See 289 U.S. at 176–177.]

Petitioner seeks to avoid the application of the principles announced in *Reineck* v. *Smith, supra,* by claiming that First National had a direct remainder interest in the insurance proceeds and that its fiduciary obligations arose only under the will of Charles W. McNear *after* it had collected the insurance proceeds. In essence, petitioner asserts that First National was a beneficiary of those proceeds in its own right. But a beneficiary is one who has a beneficial interest of his own and not one who administers property for the benefit of others. See *Reinecke* v. *Smith,* 289 U.S. at 174. Clearly, First National fits the latter category. We do not think its status as the remainderman of the insurance proceeds so enlarged its interest as to place it outside the rationale of *Reinecke* v. *Smith, supra. New England Merchants Nat. Bank of Boston* v. *United States,* 384 F. 2d at 180. Nor does petitioner's recital of numerous authorities under State law with respect to the requirement of good faith imposed upon the exercise of discretionary powers by a trustee or the ability of a beneficiary to enforce that require-

ment by injunction, surcharge, or otherwise have any bearing on the issue before us. *New England Merchants Nat. Bank of Boston* v. *United States*, 384 F. 2d at 180.

Petitioner admits that, "No provision in the Will of Charles W. McNear in express terms directs or controls the exercise of the Trustee's power to permit the withdrawal of the retained funds by Janice Mc-Near Towle." Petitioner argues that the testamentary objective of Charles W. McNear was to assure that the principal of his estate would pass to his grandson or his heirs and that the trustee had a special duty to see that such objective was accomplished. But on this record it is at least equally, if not more, plausible to conclude that Charles W. Mc-Near considered the insurance settlements to be separate from the residuary trust in order that the decedent would have funds adequate to meet her reasonable desires during her lifetime, as she saw them, and that the corporate trustee had merely the usual fiduciary responsibility to guard against the capricious exhaustion of the insurance principal.

We think that the phrase "substantial interest in the property, subject to the power, which is adverse to exercise of the power in favor of the decedent," as used in section 2041(b) (1) (C) (ii), was intended at the very least to require that the third person have a present or future chance to obtain a personal benefit [5] from the property itself. Cf. *Latta* v. *Commissioner*, 212 F. 2d 164, 167 (C.A. 3, 1954); *Commissioner* v. *Prouty*, 115 F. 2d 331, 335–336 (C.A. 1, 1940), affirming in part and reversing and remanding in part 41 B.T.A. 274 (1940).[6] Compare also the provisions of section 2041(b) (1) (C) (iii), which exclude, on an allocable basis, a portion of property subject to a power which would otherwise be a general power of appointment, but which is exercisable "in favor of" a person whose consent is required.

As the final element in the first prong of its argument, petitioner asserts that First National was simply the agent of the grandson remainderman under the will of Charles W. McNear in granting or withholding its consent to the invasion of the insurance principal by decedent.[7] We can find nothing in the record herein to support such an

---

[5] Whether such benefit includes, not only the possibility of direct realization, but also the possibility of indirect realization through a power affirmatively to dispose of an interest in the property to others is a question we are not now required to decide. See 5 Mertens, Law of Federal Gift & Estate Taxation, sec. 34.68, p. 302.

[6] The rationale of the *Prouty* case as to what constitutes an adverse interest has been accepted by this Court. See *Estate of Leon N. Gillette*, 7 T.C. 219, 222 (1946). See also *Strite* v. *McGinnes*, 330 F. 2d 234, 240 (C.A. 3, 1964), affirming 215 F. Supp. 513 (E.D. Pa. 1963), where the court accepted without discussion the proposition that a corporate trustee, who was a coholder of a power of appointment, was a nonadverse party where the remaindermen were the decedent's nieces and nephews.

[7] We note that if the consent of Charles McNear Towle was directly required for invasion of the insurance principal, his interest in the proceeds as remainderman would be termed substantially adverse. See sec. 20.2041–3(c) (2), ex. (1), Estate Tax Regs.

assertion. Clearly, First National's relationship to the grandson was simply that of a trustee to a beneficiary and, in this context, our previous analysis refutes petitioner's contention.

The second prong of petitioner's argument is that, in consenting to the exercise of the decedent's power to invade the insurance principal, First National was limited by the standard of invasion for "support, comfort, maintenance or education" contained in paragraph 6(b) of Charles W. McNear's will. Even if such phraseology created an ascertainable standard (see *Strite* v. *McGinnes*, 330 F. 2d 234 (C.A. 3, 1964), affirming 215 F. Supp. 513 (E.D. Pa. 1963); sec. 20.2041-1(c)(2), Estate Tax Regs.; *Rock Island Bank & Trust Co.* v. *Rhoads*, 353 Ill. 131, 187 N.E. 139 (1933)), we think petitioner's contention must be rejected. It is a well-established principle of Illinois law that the testator's intent in the absence of ambiguity must be sought within the confines of the testamentary instrument. *Weber* v. *Hawkins*, 30 Ill. 2d 278, 196 N.E. 2d 695 (1964); *Griffin* v. *Griffin*, 29 Ill. 2d 354, 194 N.E. 2d 641 (1963); *Erwin* v. *Kruse*, 17 Ill. 2d 364, 161 N.E. 2d 249 (1959). An examination of the relevant portions of the will and the insurance settlement contracts reveals no language which suggests that the limitations on invasion of the residuary trust were also applicable to the invasion of the insurance principal. The insurance settlement contracts refer to the decedent's privilege of withdrawing the then retained principal with the consent of First National "as Trustee under the Will of Charles W. McNear."

The will itself refers to the insurance settlement contracts in paragraph 5 and provides that the decedent could withdraw the insurance principal if "First National consents and participates in such withdrawal." Any unconsumed proceeds were payable upon the decedent's death to First National as trustee for addition to the principal of the residuary trust. Paragraph 5 further provides that *upon such receipt* the trustee would assume the "same duties, rights, powers, titles, privileges, discretions, and authorities" as specified with respect to property originally received as part of the residuary trust. Thus, we think it clear that Charles W. McNear did not intend that the insurance proceeds were to be treated as part of the residuary trust and subject to the limitations contained in paragraph 6(b) until those proceeds were in the hands of First National. This, of course, would not occur until decedent's death.

*Decision will be entered for the respondent.*