ESTATE OF RICHARD C. MAXANT, HARRIETT E. MAXANT, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Maxant v. Commissioner
Docket No. 11721-77.
United States Tax Court
T.C. Memo 1980-414; 1980 Tax Ct. Memo LEXIS 171; 40 T.C.M. (CCH) 1328; T.C.M. (RIA) 80414; September 22, 1980, Filed Robert U. Holden and Arthur J. Travers, for the petitioner. Barry J. Laterman, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a deficiency of $18,378.61 in petitioner's Federal estate tax, as well as an addition to tax of $4,360.49 pursuant to section 6651(a), Internal Revenue Code *173 of 1954. After concessions the only issues in dispute are: (1) whether the decedent possessed at his death a general power of appointment over a portion of the Frank R. Maxant Trust, thus requiring inclusion of such portion in the decedent's gross estate pursuant to sec. 2041, and (2) whether petitioner is liable for the addition to tax provided by section 6651(a) for failure to file a timely return. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and related exhibits are incorporated herein by this reference. Richard C. Maxant, whose estate is the petitioner herein, died a resident of Ayer, Mass., on October 30, 1966. His wife and executrix, Harriett E. Maxant, was a resident of Ayer, Mass., at the time the petitioner herein was filed. On or about July 12, 1945, the decedent's father, Frank R. Maxant, established a trust, the principal asset of which consisted of his stock in the Chandler Machine Co. The record does not reveal the nature of the company's business or the percentage of the father's interest therein, but the company appears to be a family corporation and the father seems to have been at least the controlling, if not the *174 sole, stockholder. The trustees were the decedent's parents, the decedent and his four siblings (three [1] brothers and a sister). The trust instrument provided for successive life interests in the net income for the father and mother, with authority in the trustees to invade principal as required for support and maintenance of the current beneficiary, as well as to pay their funeral expenses, debts, and death taxes. Both parents had already died at the time of decedent's death. Following the deaths of the grantor and his wife, the terms of the trust required that the net income be paid in equal shares to the grantor's natural children, with the issue of any deceased child to take their parent's share by right of representation. Income was to be so paid until termination of the trust. Termination of the trust was to occur under one of two circumstances, as set forth in the following provisions of the trust agreement: *175 FIFTH. When only two of the children of said FRANK MAXANT remain alive, said Trust, if not already terminated as hereinafter provided, shall be terminated, and the Trust property shall be divided equally among his then surviving children and the issue, meaning thereby the natural children and not children by adoption, of any deceased child of his, taking their parent's share by right of representation, so that if, for example, there be two living children of said FRANK MAXANT and two natural children of a deceased child of said FRANK MAXANT living at the time, that each child of said FRANK MAXANT shall receive one-third (1/3) of said trust property and each natural child of such deceased child of said FRANK MAXANT, shall receive one-sixth (1/6) of said trust property, and upon such distribution, this Trust shall cease and terminate. SIXTH. If my said original Trustees who are living at the time shall decide unanimously, at any time after the date of the death of the survivor of said FRANK MAXANT and HEDWIG L. MAXANT, that said shares of capital stock of the CHANDLER MACHINE COMPANY or of any corporation into which said CHANDLER MACHINE COMPANY shall have become merged or *176 by which it shall have been succeeded, should be sold, then said stock and any other property of said trust may be sold and the entire principal of said trust fund and any accrued and unpaid income thereof shall be divided equally among my then surviving children and the issue, meaning thereby the natural children and not children by adoption, of any deceased child of mine, taking their parent's share by right of representation in the same manner as set forth in paragraphs FOURTH and FIFTH under the title of "Payment of Income", anything in this Trust instrument to the contrary notwithstanding, and this Trust shall thereby cease and terminate. The petitioner's Federal estate tax returns, both as originally filed and as later amended, contain no reference to the trust or any interest the decedent had therein. The Commissioner determined that the decedent had a beneficial interest in the trust includable in his gross estate, and accordingly increased his gross estate by $94,000. The only matter now disputed by the parties in this regard is whether the decedent's power to secure a termination of the trust by agreeing with the other trustees to sell the trust's Chandler Machine Co. *177 stock constitutes a general power of appointment requiring the inclusion of his portion of the trust in his gross estate pursuant to section 2041(a)(2). Mr. Robert U. Holden, an attorney in Ayer, Mass., experienced in handling estates and filing estate tax returns, was retained by petitioner in 1966. In the normal course of business, Mr. Holden and his secretaries keep a diary of their activities. In the course of his representation of petitioner, Mr. Holden prepared a document entitled "Form 704, Estate Tax Preliminary Notice", dated December 29, 1966. A photocopy of such document presented in evidence bears a signature purporting to be that of Harriett E. Maxant. Mr. Holden's diary states that Harriett E. Maxant, executrix, "signed tax papers" in Mr. Holden's office on December 31, 1966, and that one of Mr. Holden's secretaries "[sent] Maxant tax paper to I.R.S." on the same date. The records of the Internal Revenue Service do not show receipt of Form 704 or any other document from petitioner on or about this date. Mr. Holden's diary for January 3, 1968, contains entries purporting to show that on January 2, 1968, Mr. Holden had an office conference with Harriett Maxant, *178 executrix, at which time she signed a Federal estate tax return, Form 706. On January 9, 1968, the diary contains the notation in Mr. Holden's handwriting, "Est Maxant, R. IRS-706 filed". At trial, Mr. Holden claimed to have no personal recollection of filing the return, although "filed", as he used the word in his diary, was intended to mean that the return was personally delivered. Mr. Holden was in Boston, Cambridge, and Worcester on January 9, 1968, and delivered papers relating to the Maxant estate to the state inheritance tax bureau. Mr. Holden has no receipt acknowledging the delivery of a return to the IRS in Boston on January 9, 1968, although the IRS would have issued a receipt upon request upon the delivery of any document. No payment of any Federal estate tax was made at this time. The IRS has no record of receiving an estate tax return from petitioner in 1968. In 1973, Revenue Agent Eugene W. Fallon was requested to obtain a Federal estate tax return, Form 706, for the estate of Richard C. Maxant. Agent Fallon met with Mr. Holden in March of 1973. Mr. Holden told Agent Fallon that a return had been filed, and that he would furnish a copy of the original return. *179 Agent Fallon was advised that the return that had been allegedly filed was incomplete and would require amendment at the conclusion of litigation involving the estate. However, despite the fact that Agent Fallon communicated with Mr. Holden approximately ten times in person, by telephone, and finally by certified mail, Agent Fallon was unable to obtain a return by December of 1973. In some conversations with Agent Fallon, Mr. Holden indicated that he could not find his retained copy of the return allegedly filed. Following the conclusion of Agent Fallon's unsuccessful efforts to obtain a return for the Estate, J. Barry Mulhern, an estate tax attorney employed by the IRS, was assigned to procure a return or prepare a substitute return. Mr. Mulhern ordered two searches of the records of the IRS Regional Service Center in an attempt to locate a return for the Estate, and these searches produced no evidence that such a return had been filed. Mr. Mulhern also communicated with Mr. Holden to request a return. On or about September 23, 1974, the District Director of Internal Revenue in Boston received from the petitioner an unsigned Form 706, United States Estate Tax Return, bearing *180 a typed legend at the top of the first page characterizing it as "Tentative". The date typed on that form next to the lines for signatures of the executor and preparer is December 27, 1967. This document was received in response to Mr. Mulhern's inquiries to Mr. Holden, and reflected an estate tax due in the amount of $11,222.18. No payment accompanied this document. On or about April 24, 1975, the District Director of Internal Revenue received from the petitioner a document entitled "Amended United States Estate Tax Return". This document bore a signature purporting to be that of Harriett E. Maxant, executrix, and was accompanied by a payment in the amount of $11,325.81, the amount shown as the net estate tax payable on the return. The IRS conducted a search of its records at the Andover Service Center and found no record of any return having been filed by petitioner prior to September 23, 1974. If a return had been filed with the Boston district office, it would have been subject to strict controls. However, the Boston office would not process the return but would forward it to the IRS Regional Service Center where it would receive a document locator number and go through *181 other procedures. Returns and other documents received by IRS district offices were forwarded to the service center in mail pouches. In 1968, no mail pouches of tax documents were lost in transit between the Boston office and the Regional Service Center. The Commissioner determined that petitioner had failed to file a timely return, and accordingly asserted the addition to tax provided by section 6651(a) of the Code. Petitioner contends that a timely return was filed. OPINION 1. General power of appointment.Under section 2041(a)(2), I.R.C. 1954, [2] if the decedent at the date of his death possessed a general power of appointment created after October 21, 1942, the value of the property subject to this power must be included in his gross estate, even if he never exercised the power or lacked capacity to do so. See Estate of Alperstein v. Commissioner,71 T.C. 351, 352-353 (1978), affd. 613 F. 2d 1213 (2d Cir. 1979), cert. denied     U.S.     (April 28, 1980); Estate of Freeman v. Commissioner,67 T.C. 202, 208-209 (1976). *182 A power of appointment is a general power if the class of permissible appointees includes the decedent, his creditors, his estate, or the creditors of his estate. Sec. 2041(b)(1), I.R.C. 1954. See Jenkins v. United States,428 F. 2d 538, 543-544 (5th Cir.), cert. denied 400 U.S. 829 (1970); Estate of Edelman v. Commissioner,38 T.C. 972, 977 (1962). *183 The Government argues that under paragraph SIXTH of the trust agreement, the decedent had the power to terminate the trust, acting in concert with the other trustees. Citing section 20.2041-1(b)(1), Estate Tax Regs., [3] the Government contends that the power to alter the beneficial enjoyment of the trust property by terminating the trust constitutes a general power of appointment within the meaning of the applicable statutory provisions. The petitioner argues that any power of appointment held by the decedent was not a general power because of the operation of section 2041(b)(1)(C)(ii), which excepts from the definition of a general power of appointment powers which are exercisable only in conjunction with parties whose interests are adverse to the exercise of the power by the decedent. Since the trust could be terminated only by a sale of its Chandler Machine Co. stock, and such a sale would deprive the trustee-beneficiaries of any potential future income or capital appreciation from the stock, the petitioner argues that the interests of the other trustees would be adverse to that of the decedent if he desired an immediate sale of the stock. The petitioner has not asserted that *184 any provisions of the trust agreement, as interpreted in accordance with Massachusetts law, [4] place any substantial restrictions on the powers of the trustee-beneficiaries in selling the stock and obtaining the present enjoyment of the proceeds. [5]
*185 But for the claimed adverse interests of the trustee-beneficiaries, it would be clear that the decedent possessed a general power of appointment over a portion of the trust property. Under paragraph SIXTH of the trust agreement, the original trustees were permitted to sell the trust's stock in the Chandler Machine Co., subject only to the requirement that the original trustees "decide unanimously" that the stock "should be sold". Upon the sale of the stock, the trust income and principal were to be distributed to the beneficiaries, including the trustees, and the trust was then to be terminated. By exercising their rights to sell the stock, the original trustees, as beneficiaries, could thus come into immediate enjoyment of the trust property, albeit in different form, rather than waiting for the natural termination of the trust under paragraph FIFTH of the trust agreement. Although in form the trust agreement provides the original trustees only with a power to sell the stock, distribution of the principal and income of the trust follows as a consequence of the sale, so that in substance the original trustees had the power to appropriate the full value of the principal of the trust. *186 Accordingly, since the decedent was one of the original trustees, he possessed a general power of appointment as to his portion of the trust property, unless the other original trustees had adverse interests. Sec. 20.2041-1(b)(1), Estate Tax Regs., supra note 3. See Pittsburgh National Bank v. United States,319 F. Supp. 176, 178-180 (W.D. Pa. 1970); cf. Estate of Clowe v. Commissioner,17 T.C. 1467, 1472 (1952). The record as it relates to the claimed adverse interests of the trustee-beneficiaries is not as complete as might be desired. However, we are satisfied that the original trustees had direct interests in the trust's property which would be adverse to the exercise of the decedent's power of appointment. Accordingly, we have concluded that the decedent did not have at his death a general power of appointment with respect to a portion of the trust property, and his interest in the trust is thus not includable in his gross estate. Sec. 2041(b)(1)(C)(ii), I.R.C. 1954. Section 2041(b)(1)(C)(ii) states that a power *187 of appointment is not a general power includable in the gross estate if the power can be exercised only "in conjunction with a person having a substantial interest in the property, subject to the power, which is adverse to the exercise of the power" by the decedent. In order to have an interest which is both "substantial" and "adverse", a person must "have a present or future chance to obtain a personal benefit from the property itself". Estate of Towle v. Commissioner,54 T.C. 368, 372 (1970) [footnote omitted]. Accord, Estate of Gilchrist v. Commissioner,69 T.C. 5, 12-13 (1977), on appeal (5th Cir. June 20, 1978). See Miller v. United States,387 F. 2d 866, 870 (3d Cir. 1968). Cf. Latta v. Commissioner,212 F.2d 164, 167 (3d Cir.), cert. denied 348 U.S. 825 (1954); Commissioner v. Prouty,115 F. 2d 331, 335 (1st Cir. 1940) ("substantial adverse interest", as used in applying the gift tax, "means a direct legal or equitable interest in the trust property"). See also Camp v. Commissioner,195 F. 2d 999, 1003-1005 (1st Cir. 1952). We find that the decedent's *188 siblings, all of whom had beneficial interests in the trust, would have received enhanced opportunities for personal benefit by refusing to permit a termination of the trust, and accordingly had interests adverse to the exercise of the power by the decedent. The principal asset of the trust was stock in the Chandler Machine Co., and the trustees had the power to terminate the trust only by selling that stock. Although the record does not reveal the nature of the business conducted by the Chandler Machine Co., it is plain to us that the corporation was a family enterprise, dominated by the decedent's father during the latter's lifetime. The trust held a controlling stock ownership interest in the corporation, if indeed it was not the sole shareholder. [6] In the circumstances there would appear to be a serious question whether there was a ready market for the sale of the stock of such family corporation and whether such sale could be made only at a price which at least one trustee might reasonably perceive to be substantially below the true value of the stock. Moreover, the sale of the stock could deprive the trustees, or at least one of them (see note 6, supra) of the uniquely *189 valuable employment opportunities that control of a family corporation affords. Finally, if any of the original trustees died without issue, the interest of the deceased trustee would pass to the remaining beneficiaries. A liquidation of the trust would force the trustees to forego any potential increase in their proportionate interests if one of their number should die without issue prior to the mandatory termination of the trust. *190 We do not single out any one of the foregoing considerations as furnishing the sole basis for our conclusion that section 2041(b)(1) is inapplicable. But we do state that these considerations, taken in the aggregate, convince us that the interests of the other trustees were sufficiently substantial and adverse to preclude treatment of the decedent's power as a general power of appointment within the meaning of the statute. 2. Section 6651(a). Failure to file timely return. The Commissioner determined that petitioner failed to file a timely return, and accordingly claimed the addition to tax provided by section 6651(a), I.R.C. 1954. [7] The petitioner contends that a timely return was filed, but it of course bears the burden of proof on this issue. See Rule 142(a), Tax Court Rules of Practice and Procedure.
*191 Section 6075(a), as in effect for the year in issue, required the filing of estate tax returns within 15 months of the decedent's death. [8] We are unable to find that petitioner filed a Federal estate tax return within the time required by the statute. Petitioner's counsel, Mr. Holden, candidly testified that he had no recollection of filing the return, and relied on his office records purporting to show that he had prepared a return and timely delivered it to the Internal Revenue Service in Boston. He did not even suggest that these records refreshed his recollection, and made clear that he was relying solely on the records *192 themselves. However, with the exception of Mr. Holden's testimony, no evidence was introduced to establish the extent of reliability of his office records. The fragmentary nature of the diary entries was not reassuring, and even a purported copy of the return alleged to have been filed bore a legend characterizing it as "tentative". Moreover, no payment accompanied the return allegedly filed, and notwithstanding numerous efforts on the part of the IRS to obtain a copy of such return allegedly filed in 1968, none was made available to it until September 1974. Although we certainly could not find that the Commissioner has never lost a return, [9] based on our evaluation of the record as a whole, we find it at least as likely in this case that the return purportedly filed was either lost or mislaid prior to its reaching the IRS or that the necessary final steps were not in fact taken to file it. Respondent's detailed evidence as to procedures and record keeping practices of the IRS in respect of estate tax returns gives further force to the burden of proof that petitioner must carry, and it is our judgment that petitioner has not carried that burden. The section 6651(a) addition *193 to tax must be sustained. In order to give effect to agreement of the parties as to certain other issues, and to permit recomputation of the section 6651(a) addition to tax in the light of our conclusion in respect of the general power of appointment issue, Decision will be entered under Rule 155.
Footnotes
1. There is confusion in the stipulation of facts as to whether the decedent had three or four brothers. Paragraph 5 of the stipulation lists four persons as the "decedent's brothers", but one of those four persons seems to be the decedent himself.↩
2. SEC. 2041. POWERS OF APPOINTMENT. (a) In General.--The value of the gross estate shall include the value of all property-- (2) Powers Created After October 21, 1942.--To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942 * * *. (b) Definitions.--For purposes of subsection (a)-- (1) General Power of Appointment.--The Term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that-- (C) In the case of a power of appointment created after October 21, 1942, which is exercisable by the decedent only in conjunction with another person-- (ii) If the power is not exercisable by the decedent except in conjunction with a person having a substantial interest in the property, subject to the power, which is adverse to exercise of the power in favor of the decedent--such power shall not be deemed a general power of appointment. For the purposes of this clause a person who, after the death of the decedent, may be possessed of a power of appointment (with respect to the property subject to the decedent's power) which he may exercise in his own favor shall be deemed as having an interest in the property and such interest shall be deemed adverse to such exercise of the decedent's power. (iii) If (after the application of clause * * * (ii)) the power is a general power of appointment and is exercisable in favor of such other person--such power shall be deemed a general power of appointment only in respect of a fractional part of the property subject to such power, such part to be determined by dividing the value of such property by the number of such persons (including the decedent) in favor of whom such power is exercisable. For purposes of clauses (ii) and (iii), a power shall be deemed to be exercisable in favor of a person if it is exercisable in favor of such person, his estate, his creditors, or the creditors of his estate.↩
3. Sec. 20.2041-1(b)(1), Estate Tax Regs., provides as follows: (b) Definition of "power of appointment"--(1) In general. The term "power of appointment" includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations. For example, if a trust instrument provides that the beneficiary may appropriate or consume the principal of the trust, the power to consume or appropriate is a power of appointment. Similarly, a power given to a decedent to affect the beneficial enjoyment of trust property or its income by altering, amending, or revoking the trust instrument or terminating the trust↩ is a power of appointment. (Emphasis supplied.)
4. See Morgan v. Commissioner,309 U.S. 78, 80-82↩ (1940). 5. Compare Maytag v. United States,493 F. 2d 995, 998-999 (10th Cir. 1974), with Estate of Rolin v. Commissioner,68 T.C. 919, 927-929 (1977), affd. 588 F. 2d 368 (2d Cir. 1978), and Rev. Rul. 54-153, 1954-1 C.B. 185↩, 186. See generally 3 A. Scott, The Law of Trusts sec. 187.6 (3d ed. Supp. 1979).
6. Paragraph TENTH(g) of the trust agreement, quoted below, advises the trustees to take certain actions with respect to the management of the corporation, actions which would have been impossible unless the trust held a controlling interest in the Chandler Machine Co.: (g) I, Frank Maxant, advise and request said Trustees in the administration of this Trust and the conduct of the Chandler Machine Company, to cooperate fully for the common good of all the beneficiaries, not permitting self interest or individual opinion to stand in the way, to the end that all may benefit as much as possible from this trust and the business of the Chandler Machine Company be promoted. I further particularly advise and request said Trustees to elect said WILLIAM THEODORE MAXANT, President and General Manager of said Chandler Machine Company as my successor and to continue him as President and General Manager of that Company as long as he is able and willing to serve because I consider him to be best fitted by training and experience for managing the Company's affairs.↩
7. Section 6651(a), as in effect with respect to the filing of petitioner's return, and prior to its amendment by section 943(a) of the Tax Reform Act of 1969, Pub. L. No. 91-172, 83 Stat. 487, provided as follows: SEC. 6651. FAILURE TO FILE TAX RETURN. (a) Addition to the Tax.--In case of failure to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.↩
8. Section 6075, as in effect with respect to the filing of petitioner's return, and prior to its amendment by section 101(b) of the Excise, Estate, and Gift Tax Adjustment Act of 1970, Pub. L. No. 91-614, 84 Stat. 1836, provided as follows: SEC. 6075. TIME FOR FILING ESTATE AND GIFT TAX RETURNS. (a) Estate Tax Returns.--Returns made under section 6018(a)↩ (relating to estate taxes) shall be filed within 15 months after the date of the decedent's death.
9. Cf. Ferguson v. Commissioner,14 T.C. 846, 850↩ (1950).